UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHARLES JOHNSON,

       Petitioner,

vs.                                                    Case No. 3:19-cv-1338-HES-MCR

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

       Respondents.

_____

## ORDER

## I.  INTRODUCTION

Petitioner, through counsel, filed an Amended Petition for Writ of Habeas Corpus By a Person in State Custody Under 28 USC § 2254 and Supporting Memorandum of Law (Amended Petition) (Doc. 9) challenging his state court (Duval County) conviction for burglary of a dwelling.   Respondents filed a Response to Amended Petition for Writ of Habeas Corpus (Response) (Doc. 14).   This was followed by Petitioner's Reply to Response (Reply) (Doc. 17).   Petitioner raises three grounds in his Amended Petition.   Respondents

contend ground one is unexhausted and procedurally defaulted.   Response at 20-26.[1]

## II.  EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing.[2]  Amended Petition at 1, 39.  "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing."  Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citations omitted), cert. denied, 137 S. Ct. 2245 (2017).  To be entitled to an evidentiary hearing, a petitioner must allege "facts that, if true, would entitle him to relief."  Martin v. United States, 949 F.3d 662, 670 (11th Cir.) (quoting Aron v. United States, 291 F.3d 708, 715 (11th Cir. 2002)) (citation omitted), cert. denied, 141 S. Ct. 357 (2020).  See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner bears the burden of establishing the need for an evidentiary hearing with more than speculative and inconcrete claims of need),

---

[1] Respondents filed Exhibits to Response to Petition for Writ of Habeas Corpus (Doc. 14). The Court will hereinafter refer to the exhibits as "Ex."  The page numbers referenced are the Bates stamp numbers at the bottom of each page of the exhibit.  Otherwise, the page number on the document will be referenced.  For the Amended Petition, Response, and Reply, the Court references the page numbers assigned by the electronic filing system.

[2] The Court notes that Petitioner received an evidentiary hearing in the state circuit court on grounds one and three of his post-conviction motion, grounds not pursued in his Amended Petition.  Ex. J.  He had counsel for this post-conviction proceeding.  Id.

cert. denied, 565 U.S. 1120 (2012); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) (same).

If the allegations are contradicted by the record, patently frivolous, or based upon unsupported generalizations, the court is not required to conduct an evidentiary hearing. Martin, 949 F.3d at 670 (quotation and citation omitted). Here, the pertinent facts are fully developed in this record or the record otherwise precludes habeas relief; therefore, this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Upon review, Petitioner has not met his burden as the record refutes the asserted factual allegations or otherwise precludes habeas relief; therefore, the Court finds Petitioner is not entitled to an evidentiary hearing. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Thus, Petitioner's request for an evidentiary hearing is denied.

## III. HABEAS REVIEW

Federal courts are authorized to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Lee v. GDCP Warden, 987 F.3d 1007, 1017 (11th Cir. 2021) (quoting 28 U.S.C. § 2254). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), there is a very deferential

framework, limiting the power of federal courts to grant relief if a state court denied a claim on its merits.  Sealey v. Warden, Ga. Diagnostic Prison, 954 F.3d 1338, 1354 (11th Cir. 2020) (citation omitted) (acknowledging the deferential framework of AEDPA for evaluating issues previously decided in state court), cert. denied, 141 S. Ct. 2469 (2021); Shoop v. Hill, 139 S. Ct. 504, 506 (2019) (per curiam) (recognizing AEDPA imposes "important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases").

Indeed, relief is limited to occasions where the state court's decision:

> "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A state court's decision is "contrary to" clearly established federal law if the state court either reaches a conclusion opposite to the Supreme Court of the United States on a question of law or reaches a different outcome than the Supreme Court in a case with "materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle" from Supreme Court precedents "but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413, 120 S. Ct. 1495.

Lee, 987 F.3d at 1017-18.

This high hurdle is not easily surmounted; if the state court applied clearly established federal law to reasonably determined facts when determining a claim on its merits, "a federal habeas court may not disturb the state court's decision unless its error lies 'beyond any possibility for fairminded disagreement.'" Shinn v. Kayer, 141 S. Ct. 517, 520 (2020) (per curiam) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). Also, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). "The state court's factual determinations are presumed correct, absent clear and convincing evidence to the contrary." Sealey, 954 F.3d at 1354 (quoting 28 U.S.C. § 2254(e)(1)). This presumption of correctness, however, applies only to findings of fact, not mixed determinations of law and fact. Brannan v. GDCP Warden, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), cert. denied, 573 U.S. 906 (2014). Furthermore, the second prong of § 2254(d), requires this Court to "accord the state trial court [determination of the facts] substantial deference." Dallas v. Warden, 964 F.3d 1285, 1302 (11th Cir. 2020) (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)), petition for cert. filed, (U.S. Feb. 27, 2021) (No. 20-7589). As such, a federal district court

may not supersede a state court's determination simply because reasonable minds may disagree about the finding.   Id. (quotation and citation omitted).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are "governed by the familiar two-part Strickland[v. Washington, 466 U.S. 668 (1984)] standard." Knight v. Fla. Dep't of Corr., 958 F.3d 1035, 1038 (11th Cir. 2020), cert. denied, 141 S. Ct. 2471 (2021). To prevail on a claim of ineffective assistance of counsel, a petitioner must successfully show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" as well as show "the deficient performance prejudiced the defendant, depriving him of a 'fair trial, a trial whose result is reliable.'" Raheem v. GDCP Warden, 995 F.3d 895, 908 (11th Cir. 2021) (quoting Strickland, 466 U.S. at 687).   As both components under Strickland must be met, failure to meet either prong is fatal to the claim. Raheem, 995 F.3d at 908 (citation omitted).

The Eleventh Circuit warns:

> because "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' . . . when the two apply in tandem, review is 'doubly' so.  Harrington [v. Richter, 562 U.S. 86, 105 (2011)] (internal citations and quotation omitted).  Thus, under § 2254(d), "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

6

Tuomi v. Sec'y, Fla. Dep't of Corr., 980 F.3d 787, 795 (11th Cir. 2020), cert.

denied, 141 S. Ct. 1721 (2021).

## V.   GROUND ONE

Respondents contend ground one is unexhausted and procedurally

defaulted.   The doctrine of procedural default requires the following:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's conviction and
> sentence are guided by rules designed to ensure that
> state court judgments are accorded the finality and
> respect necessary to preserve the integrity of legal
> proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under
> which a federal court will not review the merits of
> claims, including constitutional claims, that a state
> court declined to hear because the prisoner failed to
> abide by a state procedural rule. See, e.g., Coleman,[3]
> supra, at 747-748, 111 S. Ct. 2546; Sykes,[4] supra, at
> 84-85, 97 S. Ct. 2497. A state court's invocation of a
> procedural rule to deny a prisoner's claims precludes
> federal review of the claims if, among other requisites,
> the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is
> firmly established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. ----, ----, 131 S. Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler,
> 558 U.S.----, ----, 130 S. Ct. 612, 617-618, 175 L.Ed.2d
> 417 (2009). The doctrine barring procedurally
> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and

---

3  Coleman v. Thompson, 501 U.S. 722 (1991).

4  Wainwright v. Sykes, 433 U.S. 72 (1977).

> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012).

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. Castille v. Peoples, 489 U.S. 346, 349 (1989); Rose v. Lundy, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009) (quoting Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)), cert. denied, 558 U.S. 1151 (2010).

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez, 566 U.S. at 10 (citing Coleman, 501 U.S. at 750). To demonstrate cause, a petitioner must show some objective factor external to the defense impeded his effort to properly raise the claim in state court. Wright v. Hopper, 169 F.3d 695, 703 (11th Cir.), cert. denied, 528 U.S. 934 (1999). If cause is established, a petitioner must demonstrate prejudice. To demonstrate prejudice, a petitioner must show "there is at least a reasonable

probability that the result of the proceeding would have been different had the constitutional violation not occurred." Owen, 568 F.3d at 908.

Alternatively, a petitioner may obtain review of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995). The gateway exception is meant to prevent a constitutional error at trial from causing a miscarriage of justice and conviction of the actually innocent. Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013).

In ground one, Petitioner raises the following claim: "[t]he state court's denial of Mr. Johnson's motion for judgment of acquittal resulted in a due process violation, contrary to the Fifth and Fourteenth Amendments to the Federal Constitution." Amended Petition at 15. At trial, defense counsel, Andrea Fourman, moved for a judgment of acquittal, adopting the arguments of the attorneys for Mr. Drayton and Mr. Mitchell, co-defendants. Ex. C at 298. Ms. Fourman presented her own argument as well. Id. at 298-99. She claimed no evidence had been introduced placing Petitioner in the house. Id. Additionally, she said the principal theory was unsupported in that the state had failed to present evidence that Petitioner did anything in furtherance of any crime. Id. at 299.

The prosecutor responded that it would be a jury question as to whether the defendant was in the house.  Id. at 301.  She also opined that if the defendant was not believed to be inside, the jury could find the defendant was outside the home, and the principal theory would be applicable.  Id. at 301-302.  With regard to Petitioner in particular, the prosecutor argued that both victims saw someone in a white T-shirt, the white T-shirt removed from Petitioner was introduced in court, and one victim remembered seeing one individual, described as having "nappy hair" wearing the T-shirt.  Id. at 303.  The prosecutor also referred to the photograph of Petitioner, introduced in the case, as matching the victim's description of one of the perpetrators.  Id.

The prosecutor continued:

> Additionally, all three of the defendants sitting at the table were found not even a hundred yards away from the person whose print was found in the house. Additionally, they were seen, I would argue to the jury that they're seen running with the person who has the print in the house and all along it's been four to five black males, it's not that there was two, it's not that there was three, it's four to five and in this case four were apprehended that day.

Id.

The trial court denied all of the defendants' motions for judgment of acquittal, finding that with regard to circumstantial evidence, the evidence presented, taken in the light most favorable to the state, presents a prima facie

case and the state has met its burden with regard to the circumstantial evidence applying the circumstantial evidence standard of review (there can be no conviction unless the evidence is inconsistent with every reasonable hypothesis of innocence). <u>Id</u>. at 304. The court found the case did not meet that standard for that defense. <u>Id</u>. Later on, Ms. Fourman renewed the motion for judgment of acquittal. <u>Id</u>. at 312-13. The court did not grant the motion and simply said, "Okay. Thank you." <u>Id</u>. at 313. Additionally, the court ruled it would give the principal instruction. <u>Id</u>. at 319.

On direct appeal, through counsel, Petitioner claimed the trial court erred in denying the motion for judgment of acquittal.[5] Ex. E at 22-26. At the outset, Petitioner argued the evidence was "legally insufficient." <u>Id</u>. at 22. In support, Petitioner claimed:

> Due process requires the state to prove every element of a crime beyond a reasonable doubt. <u>In re Winship</u>, 397 U.S. 358, 361 (1970); <u>Long v. State</u>, 689 So. 2d 1055, 1057 (Fla. 1997). If the state cannot meet this burden, a judgment of acquittal should be granted. <u>M.P.W. v. State</u>, 702 So. 2d 591, 592 (Fla. 2d DCA 1997). The State did not meet its burden, and this Court should vacate Mr. Johnson's burglary conviction.

<u>Id</u>. at 26.

---

[5] In his motion for new trial, Petitioner raised a claim of trial court error. Ex. A at 109-110. The circuit court denied the motion. <u>Id</u>. at 121, 149.

On August 16, 2011, the First District Court of Appeal (1st DCA) affirmed per curiam.   Ex. H.   The mandate issued on September 8, 2011.   Id.

In addressing the question of exhaustion, this Court must ask whether the claim was raised in the state court proceedings and whether the state court was alerted to the federal nature of the claim:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. See 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005). The Supreme Court has suggested that a litigant could do so by including in his claim before the state appellate court "the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L.Ed.2d 64 (2004). The Court's guidance in Baldwin "must be applied with common sense and in light of the purpose underlying the exhaustion requirement"-namely, giving the state courts "a meaningful opportunity" to address the federal claim. McNair, 416 F.3d at 1302. Thus, a petitioner could not satisfy the exhaustion requirement merely by presenting the state court with "all the facts necessary to support the claim," or by making a "somewhat similar state law claim." Kelley,[6] 377 F.3d at 134-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing

---

6 Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317 (11th Cir. 2004), cert. denied, 545 U.S. 1149 (2005).

upon (his) [federal] constitutional claim." Id. at 1344
(quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert.
denied, 568 U.S. 1104 (2013).

In this instance, on direct appeal, Petitioner referenced both due process
and the seminal Supreme Court case, In re Winship.   He argued that the state
did not prove every element of the crime, depriving him of due process of law.
As such, he fairly presented his claim to the state court, referring to both the
federal source of law and a case deciding the claim on federal grounds.
Applying the guidance of Baldwin and recognizing the purpose of the
exhaustion requirement to give the state courts a meaningful opportunity to
address the federal claim, the Court concludes that Petitioner made his claim
in a manner that provided the state court with the opportunity to apply the
controlling legal principle to the facts bearing upon his constitutional claim of
a deprivation of due process of law.

Thus, the state court had a meaningful opportunity to address the
federal claim.   Indeed, the Court concludes that in its affirmance, the 1st DCA
rejected the claim of a deprivation of due process of law.   The 1st DCA need
not explain its reasoning for this Court to give deference to its decision.
Richter, 562 U.S. at 98.   "When a federal claim has been presented to a state

court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99.   As such, the Court assumes an on-the-merits ruling by the 1st DCA.

Respondents' contention that ground one is unexhausted and procedurally defaulted is rejected.   The 1st DCA's decision is entitled to AEDPA deference.   Petitioner has failed to show the state court's decision for ground one was either an unreasonable determination of the facts or in contravention of federal law.   The clearly established Federal law is limited to that which has been determined by the Supreme Court of the United States, 28 U.S.C. § 2254(d)(1).   Petitioner has not shown that the rejection of this claim was either contrary to, or involved an unreasonable determination of, clearly established Federal law, or based on an unreasonable determination of the facts based on the evidence presented in the state court proceeding.   As such, ground one is due to be denied.

In the alternative, Petitioner is not entitled to habeas relief on ground one.   A discussion follows.

Petitioner is not entitled to habeas relief on his claim of a Fourteenth Amendment violation.   "In Jackson v. Virginia, 443, U.S. 307, [324] . . ., we held that a state prisoner is entitled to habeas corpus relief if a federal judge

14

finds that 'upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" McDaniel v. Brown, 558 U.S. 120, 121 (2010) (per curiam).   Upon due consideration, the evidence adduced at trial was sufficient to convict Petitioner of burglary of a dwelling.

This Court "must consider all of the evidence admitted at trial[.]"   Id. at 131.   Reviewing the evidence "in the light most favorable to the prosecution[,]" Jackson, 443 U.S. at 319, this Court must presume that the trier of fact resolved any conflicts in favor of the prosecution, and giving credit and deference to that resolution, this Court can only set aside a state-court decision as an unreasonable application of . . . clearly established Federal law, if the state court's application is objectively unreasonable.   28 U.S.C.§ 2254(d).

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed the offense of burglary of a dwelling.   The court charged the jury:

> To prove the crime of burglary, the State must prove the following two elements beyond a reasonable doubt:   One, Stancel S. Drayton, Charles Deangelo Johnson, and Deron Mytel Mitchell, entered a structure owned by or in the possession of Collie Buchanan and, two, at the time of entering the structure Stancel S. Drayton, Charles Deangelo Johnson, and Deron Mytel Mitchell had the intent to commit an offense in that structure.

15

You may infer that Stancel S. Drayton, Charles Deangelo Johnson, and Deron Mytel Mitchell had the intent to commit a crime inside the structure if the entering or attempted entering of the structure was done stealthily and without the consent of the owner or occupant.

The entry necessary need not be the whole body of the defendant. It is sufficient if the defendant extends any part of the body far enough into the structure or conveyance to commit an offense therein.

The intent with which an act is done is an operation of the mind and therefore is not always capable of direct and positive proof. It may be established by circumstantial evidence like any other fact in a case.

Ex. D at 407-408.

The court gave the principal instruction:

If the defendant helped another person or persons attempt or attempt to commit a crime, the defendant is a principal and he must be treated as if he had done all the things the other person or persons did if, one, the defendant had a conscious intent that the criminal act be done and, two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the person or persons to actually commit or attempt to commit the crime.

To be a principal, the defendant does not have to be present when the crime is committed or attempted.

Id. at 410-11.

The evidence at trial showed that the victims returned home to find a strange vehicle in their driveway. They saw a person or persons inside the home, peeking outside. Mr. Buchanan, one of the victims, saw a black male with a white shirt. Mrs. Buchanan, one of the victims, described someone matching the description of Petitioner, and Petitioner was arrested wearing a white T-shirt, which was introduced at trial.[7] Mr. Buchanan also described one of the perpetrators as wearing a white, short-sleeved T-shirt. Mr. Buchanan saw four to five black males fleeing out of the back door of his home. A police officer received a report of suspicious activity, four black males running through the college campus parking lot after a burglary in the area. The officer proceeded to a wooded area and four black males jumped out of the shrubbery and started running. The officer pursued one suspect that fled west through the college campus while the other three suspects fled east. The officer caught the juvenile who fled west. The juvenile's prints were found inside the burgled home. Three suspects were found by a canine officer and his canine, hiding in a nearby shed, in someone's backyard.

---

[7] Mrs. Buchanan recognized Petitioner at a show-up by his appearance, including his "nappy" or uncombed hair and white shirt. Ex. B at 134. At trial, the state introduced a photograph of Petitioner as he appeared at the time of his arrest. Ex. A at 72. Mr. Buchanan remembered the individual in the white T-shirt. Ex. B at 76-78. He said he made the identification by recognizing clothing and hair. Id. at 108. The state also introduced the white T-shirt removed from Petitioner. Mr. and Mrs. Buchanan did not identify Petitioner at trial.

In this case, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Petitioner committed burglary of a dwelling as charged in the information. This Court must defer to this resolution as well as give AEDPA deference to the 1st DCA's decision on direct appeal to the extent the claim was raised in the federal constitutional sense. Also, to the extent that the federal constitutional ground was addressed, the state court's rejection of the constitutional claim is entitled to deference as required pursuant to AEDPA. Brown, 558 U.S. at 132 (a reviewing court must not depart "from the deferential review that Jackson and § 2254(d)(1) demand").

Thus, the adjudication of the state appellate court resulted in a decision that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. Therefore, Petitioner is not entitled to relief on this ground because the 1st DCA's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in view of the evidence presented in the state court proceedings. Ground one is due to be denied.

## VI.   GROUND TWO

In ground two, Petitioner raises the following claim:

> The state court's denial of Mr. Johnson's motion to
> suppress identifications made in an unnecessarily
> suggestive show-up giving rise to an unreliable
> identification was contrary to and an unreasonable
> application of clearly established federal law, as well
> as an unreasonable determination of the facts in light
> of the evidence presented, resulting in violations of
> Mr. Johnson's Fifth and Fourteenth amendment
> rights to the federal constitution.

Amended Petition at 19.

Mr. Buchanan said an officer told them, "they think they might have caught the suspects, they need us to come ID them." Ex. B at 75. Mr. Buchanan attested that he recognized three of the suspects at the show-up. Id. at 76. Mr. Buchanan made his identification through their physical features, including hair and clothing. Id. at 76, 108. He specifically remembered the white, short-sleeved T-shirt. Id. at 78.

Mrs. Buchanan testified she saw an individual peek out of the house wearing a white shirt, needing a comb. Id. at 120. She described the black male's hair as "nappy." Id. at 121. She attested she thought she had identified two individuals at the show-up, the one with the white shirt and the one in the black shirt. Id. at 141. She identified the suspects, recognizing their clothing and hair. Id. When asked if the police told her, "we've got these guys or we need you to identify these guys[,]" Mrs. Buchanan testified the police actually said:  "they wanted us to go look at some people that they

19

had found to see if they looked familiar." Id. at 144. She explained, at the show-up, the police again asked her if the individual looked familiar, the same phrase they had used before the show-up. Id. at 145.

Officer Stephen Bourque testified that Defendant Johnson, at the time of his arrest, was wearing jean shorts and a white T-shirt. Ex. C at 259. Officer Bourque did not hear or see what the victims said at the show-up. Id. at 255-56.

The record demonstrates Petitioner's counsel adopted the Motion to Suppress Identification by Witness. Ex. A at 78-82. In the motion, the show-up was described, with the suspects, in handcuffs, taken out of patrol cars one by one for identification. Id. at 79. Defendants claimed the victims simply identified the first four people the police showed them. Id. at 81. Defendants sought the suppression of the identification, claiming an unnecessarily suggestive show-up. Id. at 81-82.

On April 20, 2010, the court heard argument on the motion to suppress. Ex. B at 16-24. The court denied the motion to suppress, leaving the matter open to review after hearing the testimony. Id. at 21, 23-24. After the state rested, the defense renewed the motion to suppress. Ex. C at 287-88. Counsel argued, "there's been no direct testimony as to any positive

identifications of the defendants during the course of the trial.   None given by

either of the victims or any of the officers."   Id. at 288.   Counsel continued:

> There was no positive identification made by them during the course of the show-up and here at trial the victims could not say specifically that they could identify any of the defendants or which ones they were able to identify there during the course of the show-up of the officers, and none of the officers were able to say which ones they were able to identify.   So based on that, we would renew our motion to suppress identifications.

Id.   The state stood on its previous arguments and the court denied the motion

to suppress filed and adopted by the three defendants.   Id.

Petitioner raised the matter in his motion for new trial.   Ex. A at 109.

The trial court denied the motion.   Id. at 121, 149.   Of import, Petitioner

raised the claim on direct appeal (the lower court erred in denying the motion

to suppress identification where the identifications occurred during an

unnecessarily suggestive show-up).   Ex. E at i.   In doing so, Petitioner

claimed the state used an impermissibly suggestive identification procedure

which caused a likelihood of irreparable misidentification, denying Petitioner

a fair trial and due process.   Id. at 28.   He relied on the holding in Neil v.

Biggers, 409 U.S. 188 (1972) and claimed an unnecessarily suggestive

procedure was used as the police told the Buchanans that they had caught the

suspects and needed the Buchanans to identify them.   Id. at 29.   Petitioner

21

claimed all four suspects were handcuffed and taken out of police cars, making the show-up impermissibly suggestive. Id. He further claimed there was a substantial likelihood of misidentification as the viewing of the suspects was brief, the descriptions provided by the victims were vague and generic, and the victims' testimony concerning the identifications at the show-up was uncertain at best. Id. at 30-32. The 1st DCA affirmed per curiam. Ex. H.

Thus, Petitioner exhausted this ground by raising it on direct appeal to the 1st DCA. The 1st DCA affirmed and its decision is entitled to AEDPA deference.

The Court finds the state court's determination is consistent with federal precedent. The state court's ruling is based on a reasonable determination of the facts and a reasonable application of the law. In brief, the state court's adjudication of the claim is not contrary to or an unreasonable application of Supreme Court law or based on an unreasonable determination of the facts. Therefore, this claim is due to be denied.

It is important to recognize that the victims were not able to identify Petitioner in the courtroom. Thus, there is no contention that a courtroom identification was the result of the impermissibly suggestive identification procedure and therefore tainted. Instead, it is argued that the out-of-court identification of Petitioner was obtained through impermissibly suggestive

22

procedures creating a substantial likelihood of mistaken identification, denying Petitioner due process of law.

The factors to be considered in determining whether the identification was reliable are outlined in Neil v. Biggers, 409 U.S. 188, 199 (1972): "the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the suspect, the level of certainty of the identification, and the time between the crime and the identification." United States v. Beale, 921 F.2d 1412, 1433 (11th Cir.) (citing Neil v. Biggers, 409 U.S. at 199)), cert. denied, 502 U.S. 829 (1991).

Petitioner is not entitled to habeas relief. Employing the 2254 (d) more deferential standard for federal court review of state court adjudications, Petitioner's second ground must fail. In the motion to suppress, the defense relied on Rimmer v. State, 825 So. 2d 304 (Fla.) (per curiam), cert. denied, 537 U.S. 1034 (2002), which referred to the test for suppression of an out-of-court identification and the factors to be considered in evaluating the likelihood of misidentification as set forth in Neil v. Biggers. Rimmer, 825 So. 2d at 316. The trial court, after listening to argument, denied the motion to suppress. After hearing the trial testimony, the court denied the renewed motion to suppress. Thus, the court was convinced Petitioner had not shown the out-of-court identifications were unnecessarily suggestive.

On direct appeal, Petitioner relied on <u>Neil v. Biggers</u> to support his contention that the motion to suppress had been improperly denied.   Ex. E at 28-30.   The state relied on these same factors in its brief.   Ex. F at 11-13.   Of import, the record shows the 1st DCA rejected Petitioner's contention, affirming the decision of the trial court.   Ex. H.   As such, the state court's adjudication of the claim was not contrary to clearly established federal law as the <u>Neil v. Biggers</u> standard was set forth and presumably relied upon by the state court, nor did it involve an unreasonable application of clearly established federal law or unreasonable determination of the fact based on the evidence presented.   Thus, Petitioner is not entitled to habeas relief on his claim of deprivation of due process of law.

To violate due process, the identification procedure must be unnecessarily suggestive and create a substantial risk of misidentification. <u>Johnson v. Dugger</u>, 817 F.2d 726, 729 (11th Cir. 1987) (per curiam) (citation omitted).   In this case, the confrontation was shortly after the arrests, near in time to the crime.   Thus, the victims' memories were fresh.   Mrs. Buchanan said the police asked the Buchanans to look at some people to see if they looked familiar.   She repeated that that was the phrase the police officers used, not that the police officers said we have the guys, or we need you to identify the guys, or some comparable statement.   Her husband testified an officer told

them the police thought they might have caught the suspects.  On cross-examination, instead of asking Mr. Buchanan what the police said to him, Mrs. Fourman asked Mr. Buchanan if the officers said hey, we think we have the suspects and we need you to come identify them, and Mr. Buchanan responded affirmatively to the question.  Ex. B at 89.  After the trial testimony, the trial court denied the renewed motion to suppress.  Ex. C at 288.

Here the identification procedure was not so unnecessarily suggestive that it was conducive to irreparable mistaken identification.  Although the procedure was suggestive (suspects in handcuffs and in or near police cars), it did not create a substantial risk of misidentification because the identification was nonetheless reliable.  Both victims testified they had the opportunity to view the suspect, their degree of attention was sufficient, the description of the race, clothing, hair, and age of the perpetrator was accurate, the level of certainty of the identification was satisfactory, and the time between the crime and the identification was brief.  See Perry v. New Hampshire, 565 U.S. 228, 243 (2012) (improper suggestions leading to mistaken identification include: the suspect is told to wear distinctive clothing or is the only unique individual in the line-up or show-up, the witness is told by the police they caught the culprit and only a lone suspect is viewed, the suspect is pointed out by

police/prosecutor, the suspect is told to try on a piece of clothing which only fits the suspect).

There was not sufficient evidence of significant pressure to identify Petitioner during the show-up. Indeed, based on the trial testimony, there was no undue pressure to identify Petitioner. The jury viewed the picture of Petitioner made upon his arrest, matching the victims' description of one of the perpetrators of the crime. Ex. A at 72. However, the jury was also aware that neither victim identified Petitioner in the courtroom.

In this instance, the state court's ruling was not objectively unreasonable. Virginia v. LeBlanc, 137 S. Ct. 1726, 1728 (2017). The state court's ruling was not so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. Richter, 562 U.S. at 103.

Pursuant to AEDPA, this Court's role is to guard against extreme malfunctions in the state criminal justice system, not to deal with ordinary error. Here, there is no evidence of an extreme malfunction in the state criminal justice system. Thus, adherence to the principles of federalism and comity must prevail. Therefore, Petitioner is not entitled to habeas corpus relief on ground two.

## VII.   GROUND THREE

In his third and final ground, Petitioner raises a claim of ineffective assistance of trial counsel:

> The state court's determination that trial counsel was not ineffective in failing to object to Officer Michener's improper testimony concerning his police dog's ability to smell a "guilty" subject, which prejudiced the outcome of the proceedings, was based on an unreasonable determination of the facts and resulted in violations of Mr. Johnson's fifth, sixth, and fourteenth amendment rights under the federal constitution.

Amended Petition at 27.

Petitioner exhausted ground three by raising it in his Rule 3.850 motion and on appeal to the 1st DCA.   Ex. I at 1-17.   The circuit court denied relief. Id. at 61-149.   The 1st DCA affirmed with a written opinion.   Ex. O.   The 1st DCA's decision is entitled to AEDPA deference.

The Court finds the state court's determination is consistent with federal precedent.   Ground three is due to be denied as the state court's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   As such, the Court finds Petitioner is not entitled to habeas relief on ground three.

Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.   In undertaking its review, the circuit court properly

relied on the Strickland standard.[8]  Ex. I 61-63.   Initially, the court found that

Petitioner mischaracterized the officer's testimony, finding Mr. Michener

never testified that the canine could detect guilt or about scientific principles.

Id. at 68-69.   Instead, the court noted, Michener described his observations of

the canine's behavior and gave his professional interpretation of that behavior

as the canine's handler.   Id. at 69.   He explained that the canine's aggressive

behavior was an observed reaction to the tracking of a nervous or anxious

individual, not one who was guilty.   Id. at 69.   Furthermore, the state showed

Officer Michener possessed specialized knowledge regarding canine tracking

as a trained and experienced canine handler.   Id.

Of import, the court described how counsel effectively challenged Officer

Michener's testimony through cross-examination.   Id. at 70.   Officer

Michener, on cross-examination, admitted that canines do register false

positives, giving the example of a canine that alerted on a fellow law

enforcement officer who was nervous or scared.   Id.   Also, Officer Michener

said the canine could have alerted on the defendant due to the defendant's

fleeing out of fear of a dog rather than due to the attempt to hide from law

enforcement.   Id.

---

8  The 1st DCA also relied on Strickland.   Ex. O at 5.

28

Further exhibiting the effectiveness of counsel, the court pointed out that counsel did object to Michener referring to Petitioner as a "bad guy." Id. Thus, the court found that counsel adequately challenged Officer Michener's testimony on direct and effectively used cross-examination to attack, counter, or parse his testimony. Id.

The trial court found counsel's conduct reasonable under the circumstances presented. The 1st DCA affirmed with an opinion. The record supports the state courts' conclusions, showing counsel's performance was well within the broad range of reasonable assistance under prevailing professional norms. Strickland. Ms. Fourman's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair proceeding. Although Ms. Fourman did not object to the stated objectionable portion of Michener's testimony, she vigorously cross-examined the witness, showing that the canine had alerted on a police officer in a tense situation and that there were other causes, other than running from the police, for a person to be anxious and exhibit an odor causing the canine to alert. Furthermore, the court recognized Ms. Fourman did object to some objectionable terminology used by the officer.

The record shows Officer Michener testified as to a "hot search." Ex. C at 217. He said he directed his dog to locate human odor. Id. at 218. He

29

noted that a running, anxious, and fearful person would release a different odor, to which this canine would react with intense or aggressive behavior.   Id. at 218, 227-28.   The 1st DCA concluded that this was admissible lay opinion based on the officer's personal knowledge or perceptions based on his experience as a K-9 handler.   Ex. O at 8-9.   The appellate court affirmed the decision of the trial court, finding "counsel at trial cannot be deficient for failing to make a meritless objection."   Id. at 10.

Finding no deficient performance, the 1st DCA affirmed the decision of the trial court.   Without satisfying the performance prong, Petitioner cannot meet the Strickland standard.

Finally, there is no reasonable probability that the outcome of the case could have been different if defense counsel had taken the action suggested by Petitioner.   Instead of making an objection during Officer Michener's testimony on direct, defense counsel effectively addressed the matter through cross-examination, skillfully attacking the officer's testimony.

Not only is the Court not convinced that, under these circumstances, counsel's performance fell outside the range of reasonably professional assistance, Petitioner has not shown resulting prejudice as there is no reasonable probability that if defense counsel had objected, his objection would have been sustained, as evinced by the above-mentioned decision of the 1st

DCA finding it would be a meritless objection.   A defense attorney need not make a meritless objection that would not have obtained relief.   Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019).

As the threshold standard of Strickland has not been met, Petitioner has failed to demonstrate that his state court proceeding was fundamentally unfair and his counsel ineffective.   Thus, Petitioner has failed to demonstrate a Fifth, Sixth, or Fourteenth Amendment violation under the United States Constitution.

Here, the state court properly applied the two-pronged Strickland standard of review.   Thus, Petitioner cannot satisfy the "contrary to" test of 28 U.S.C. § 2254(d)(1) as the state court rejected the claim based on Strickland. Furthermore, Petitioner has failed to show that the state court unreasonably applied Strickland or unreasonable determined the facts.   Indeed, the state court was objectively reasonable in its inquiry and the 1st DCA affirmed the decision with a written opinion.   The 1st DCA's adjudication of the claim is not contrary to or an unreasonable application of Strickland and its progeny or based on an unreasonable determination of the facts.   Therefore, ground three is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    Petitioner's request for an evidentiary hearing is **DENIED**.

2.    The Amended Petition (Doc. 9) is **DENIED**.

3.    This action is **DISMISSED WITH PREJUDICE**.

4.    The **Clerk** shall enter judgment accordingly and close this case.

5.    If Petitioner appeals the denial of his Amended Petition (Doc. 9),

**the Court denies a certificate of appealability**.[9]   Because this Court has

determined that a certificate of appealability is not warranted, the **Clerk** shall

terminate from the pending motions report any motion to proceed on appeal as

a pauper that may be filed in this case.   Such termination shall serve as a

denial of the motion.

   **DONE AND ORDERED** at Jacksonville, Florida, this _28th_ day of

July, 2021.

UNITED STATES DISTRICT JUDGE

---

[9] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

sa 7/26
c:
Charles Johnson
Counsel of Record